IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| | : | NO. 1:CR-00-338-02 |
| v. | : | |
| | : | (Judge Kane) |
| | : | |
| JOSEPH VIGGIANO, | : | |
| Petitioner | : | |
| | : | |
| | : | |

**MEMORANDUM AND ORDER**

Before this Court is Petitioner's pro se motion for issuance of a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1). Upon due consideration of this motion the Court finds that Petitioner is not entitled to a certificate of appealability under any grounds asserted in the petition. This Court will therefore deny Petitioner's motion for a certificate of appealability.

**I.    Background[1]**

In 1994, Joseph Viggiano and Larry Williams founded MICOM, Inc., which sold application services to consumers for paging and mobile radio licenses. Investors were told that they could acquire FCC licenses through MICOM and then either resell these licenses to larger companies or lease them for profit. In fact, resale of these types of licenses is prohibited by law and telecommunication companies do not lease licenses from consumers. As a consequence of these misrepresentations, 175

---

[1] The following are undisputed facts taken from Petitioner's § 2255 motion (Doc. No. 81) and the government's brief in opposition (Doc. No. 91).

consumers invested $1.6 million through MICOM.

In January 1996, the Federal Trade Commission ("FTC") shut down MICOM and initiated civil proceedings against Petitioner and Williams for engaging in deceptive acts and practices in violation of the FTC Act. In March 1997, the District Court for the Southern District of New York issued a permanent injunction against Petitioner and the other defendants, enjoining them from engaging in telemarketing activities. The court also assessed a $1.6 million fine against Petitioner.

On December 13, 2000, Petitioner was charged with one count of conspiracy to commit mail and wire fraud and twenty-four counts of mail fraud. Petitioner pled not guilty to all charges. On June 28, 2001, pursuant to a plea agreement, Petitioner pled guilty to the single conspiracy count. On February 7, 2002, the government filed a motion for downward departure pursuant to U.S.S.G. 5K1.1, which the Court granted. On February 22, 2002, Petitioner received a sentence of 44 months imprisonment, 36 months supervised release, a special assessment of $50, and was ordered to pay $420,750 in restitution.

On March 14, 2002, Petitioner filed a Notice of Appeal with the United States Court of Appeals for the Third Circuit. On January 7, 2003, the Third Circuit affirmed the Court's sentence in a written opinion. See U.S. v. Williams, 57 Fed. Appx. 907 (3d Cir. 2003). On May 27, 2003, the United States Supreme Court denied certiorari.

On February 10, 2004, Petitioner filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 81.) Finding Petitioner's claims meritless, the Court held that a hearing on the motion was not required and dismissed the motion. (Doc. No. 99.)

On December 23, 2004, Petitioner filed a motion for certificate of appealability under

28 U.S.C. § 2253(c)(1). (Doc. No. 100.)

## II.     Standard of Review

Pursuant to 28 U.S.C. § 2253(c)(1), a district court is authorized to issue a certificate of appealability from the final order in a state court habeas corpus proceeding and from a final order in proceedings under § 2255. United States v. Eyer, 113 F.3d 470, 473 (3d Cir. 1997). Prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), effective April 24, 1996, a petitioner in federal custody who was denied relief by a district court on a § 2255 motion could appeal to a court of appeals without obtaining a certificate of probable cause. Id. at 472. Comparatively, a petitioner challenging detention arising out of process issued by a state court could not appeal unless the judge or justice who rendered the order, or a circuit court judge or justice, issued a certificate of probable cause. Id. Passage of the AEDPA changed these procedures, replacing certificates of probable cause with certificates of appealability and requiring prisoners in federal custody to obtain a certificate of appealability to appeal a denial of relief under § 2255. Specifically, the AEDPA amended § 2253 to read, in pertinent part, as follows:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from - -
>
>> (a) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>>
>> (b) the final order in a proceeding under section 2255.
>
> (c)(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (c)(3) The certificate of appealability under paragraph (1) shall indicate which specific   issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253.

The Third Circuit has recognized that the language of § 2253 is ambiguous and may be construed to permit only a circuit judge or justice to issue a certificate of appealability. Eyer, 113 F.3d at 472-473.  However, to construe the provisions of the section consistently, a district judge must be permitted to issue a certificate of appealability.  Id. at 473.  Specifically, the Third Circuit reasoned that "the language that an appeal may not be taken unless a 'circuit judge or justice' issues a certificate of appealability is followed by the two subparagraphs, [quoted above]: subparagraph A, relating to custody arising out of process by state court, and subparagraph B, relating to proceedings involving federal prisoners under § 2255."  Id.  As the subparagraphs are disjunctive and a district court must be able to issue a certificate of appealability in cases arising under subparagraph A, the court further reasoned that it is would be difficult, if not impossible, to construe § 2253(c)(1) so that "circuit justice or judge" would have a different meaning in the two subparagraphs.[2]  Id.  Thus, pursuant to Eyer, district courts within the Third Circuit of the United States may issue certificates of appealability.

When a district court has rejected constitutional claims alleged under a § 2255 motion on the merits, the showing required to satisfy § 2253(c)(2) is straightforward; " the petitioner must

---

[2] Subparagraph A of § 2253 concerns custody arising out of state court.  The enactment of the AEDPA also amended Rule 22(b) of the Federal Rules of Appellate Procedure, which concerns state custody, to read in pertinent part as follows:
> Certificate of Appealability - In a habeas corpus proceeding in which the detention complained of arises out of process by a State court, an appeal by the applicant for the writ may not proceed unless a district or circuit judge issues a certificate of appealability pursuant to section 2253(c) of title 28, United States Code.  If an appeal is taken by the applicant, the district judge who rendered the judgment shall either issue a certificate of appealability or state the reason why such a certificate should not issue.

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).  However, when the district court denies a § 2255 motion on procedural grounds, without reaching the prisoner's underlying constitutional claim, a certificate of appealability should issue when the prisoner shows, at least, "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack, 529 U.S. at 484.

### III.   Discussion

Petitioner asserts that he has been denied a constitutional right because reasonable jurists would find the Court's ruling on his constitutional claim of ineffectiveness of counsel debatable.  (Doc. No. 100.)  Specifically, Petitioner requests a certificate of appealability regarding whether his counsel was ineffective for 1) failing to raise a double jeopardy defense, 2) failing to argue an ex post facto defense, and 3) failing to raise an excessive fines defense during sentencing.  (Id.)

A two-prong test is followed to determine whether counsel was so ineffective as to constitute a violation of a defendant's right to counsel.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  "A petitioner must show 1) that counsel made errors so serious that counsel's representation fell below an objective standard of reasonableness, and 2) that such failure resulted in prejudice so as to deprive the petitioner of a fair trial, that is, a trial whose result is reliable."  Zettlemoyer v. Fulcomer, 923 F.2d 284, 295 (3d Cir. 1991)(citing Strickland, 466 U.S. at 687-688).  A petitioner must satisfy both prongs before a conviction is overturned based on ineffectiveness of counsel.  Strickland, 466 U.S. at 687.

The first prong is met if counsel's performance "fell below an objective standard of reasonableness." Id. at 688. In assessing this prong, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Counsel cannot be found ineffective for failing to raise a claim that lacks merit. Singletary v. Blaine, 89 Fed. Appx. 790 (3d Cir. 2004)(non-precedential opinion)(citing Moore v. Deputy Commissioner of SCI-Huntingdon, 946 F.2d 236, 245 (3d Cir. 1991)).

The second Strickland prong is only evaluated after the first prong is satisfied. Affinito v. Hendricks, 366 F.3d 252, 258 (3d Cir. 2004). Establishing prejudice requires a showing that, but for the alleged deficiencies of counsel, the outcome of the case would have been different. Hess v. Mazurkiewicz, 135 F.3d 905, 909 (3d Cir. 1998).

### A.   Double Jeopardy

Petitioner asserts that reasonable jurists would debate the Court's ruling that Petitioner's counsel was not ineffective for failing to raise a double jeopardy defense. (Doc. No. 100.) Petitioner argues that his civil fine of $1.6 million should be considered a criminal penalty rather than a civil remedy, therefore barring him from criminal prosecution pursuant to the double jeopardy clause of the United States Constitution. (Id.) Generally, the double jeopardy clause does not protect against monetary fines rendered in a civil proceeding because civil fines have not historically been viewed as criminal punishment under such circumstances. Hudson v. United States, 522 U.S. 93, 104 (1997)(citing, Helvering v. Mitchell, 303 U.S. 391, 399 (1938)). Because in the case at bar Petitioner was assessed a fine of $1.6 million, pursuant to a New York civil trial, an amount equivalent to what

consumers had invested in MICOM, the subsequent Pennsylvania criminal proceeding did not constitute double jeopardy. Thus, no reasonable jurist would debate the Court's holding that Petitioner's counsel was not ineffective for failing to raise a double jeopardy defense.

      **B.     Ex Post Facto**

Petitioner asserts that reasonable jurists would debate the Court's ruling that his counsel was not ineffective for failing to raise an ex post facto defense. Specifically, Petitioner asserts that his counsel did not argue on his behalf that the Court improperly determined Petitioner's restitution and payment schedule based upon the Mandatory Victims Restitution Act of 1996, instead of the Victim Witness Protection Act of 1982. (Doc. No. 100.) Contrary to Petitioner's claim, the Court specifically considered Petitioner's current financial resources and his earning capacity. 18 U.S.C. §§ 3663-3664 (1982). (Doc. No. 90, Exhibit 5, "Sentencing Transcript.") Based on a review of both his past and present earning ability, the Court found that Petitioner had "the ability to pay restitution but not a fine." (Id. at 24.) As the Court did not use the 1996 act as alleged, reasonable jurists would not debate whether Petitioner's counsel was ineffective for not pursuing this meritless claim during sentencing or on appeal.

      **C.     Excessive Fines**

Petitioner contends that reasonable jurists would debate the Court's ruling that his counsel was not ineffective for failing to oppose the restitution order as being unconstitutionally disproportionate. (Doc. No. 100.) Petitioner asserts that the Court's order of $420,750 in restitution is excessive when added to the $1.6 million fine ordered at the civil trial, because the two exceed the total monetary loss

suffered by the victims. (Doc. No. 100.) Fines are not unconstitutionally excessive if, "the amount of the forfeiture [bears] some relationship to the gravity of the offense that it is designed to punish." United States v. Baj, 524 U.S. 321, 334 (1997). Here, the restitution amount was based on Petitioner's ability to pay and reflective of Petitioner's failure to pay any restitution to his victims prior to his criminal sentencing. (Doc. No. 99). Therefore, reasonable jurists would not debate whether Petitioner received effective assistance of counsel on this ground.

**IV.   Conclusion**

For the foregoing reasons, this Court finds that Petitioner has failed to make a substantial showing of a denial of a constitutional right as required under § 2253 (c)(2) and will deny his application for the issuance of a certificate of appealability.

**V.     Order**

**AND NOW**, this 18th day of February, 2005, **IT IS HEREBY ORDERED THAT** Petitioner's 28 U.S.C. § 2253 motion to issue a certificate of appealability (Doc. No. 100) is **DENIED**.  The Clerk of Court shall close the file.

                                                                                 S/ Yvette Kane
                                                                          Yvette Kane
                                                                      United States District Judge