

UNITED STATES COURT OF APPEALS
for the THIRD CIRCUIT

UNITED STATES OF AMERICA  )
                          )
                          )
                          )
        vs.               )      NO. 1:CR-00-338-02
                          )      (Judge Yvette Kane)
                          )
JOSEPH VIGGIANO,          )           PRO SE
        Petitioner        )


## MOTION FOR THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Pursuant to <u>Rules of Appellate Procedure, Rule 22(b)(1)</u>, Petitioner respectfully seeks of this Court of Appeals a <u>Certificate of Appealability</u>.

I.   BACKGROUND [1]

In 1994, Joseph Viggiano and Larry Williams founded MICOM, Inc., which sold application services to consumers for paging and mobile radio licenses. Investors were told that they could acquire FCC licenses through MICOM and then either resell these licenses to larger companies or lease them for profit. In fact, resale of these types of licenses is prohibited by law and telecommunication companies do not lease licenses from consumers. As a consequence of these misrepresentations,

---

[1] The following are undisputed facts taken from Petitioner's § 2255 motion (Doc. No. 81) and the government's brief in opposition (Doc. No. 91).

175 consumers invested $1.6 million through MICOM.

In January 1996, the Federal Trade Commission ("FTC") shut down MICOM and initiated civil proceedings against Petitioner and Williams for engaging in deceptive acts and practices in violation of the FTC Act. In March 1997, the District Court for the Southern District of New York issued a permanent injunction against Petitioner and the other defendants, enjoining them from engaging in telemarketing activities. The court also assessed a $1.6 million fine against Petitioner.

On December 13, 2000, Petitioner was charged with one count of conspiracy to commit mail and wire fraud and twenty-four counts of mail fraud. Petitioner pled not guilty to all charges. On June 28, 2001, pursuant to a plea agreement, Petitioner pled guilty to the single conspiracy count. On February 7, 2002, the government filed a motion for downward departure pursuant to U.S.S.G. 5K1.1, which the Court granted. On February 22, 2002, Petitioner received a sentence of 44 months imprisonment, 36 months supervised release, a special assessment of $50, and was ordered to pay $420,750 in restitution.

On March 14, 2002, Petitioner filed a Notice of Appeal with the United States Court of Appeals for the Third Circuit. On January 7, 2003, the Third Circuit affirmed the Court's sentence in a written opinion. See U.S. v. Williams, 57 Fed. Appx. 907 (3ddCir. 2003). On May 27, 2003, the United States Supreme Court denied certiorari.

On February 10, 2004, Petitioner filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 81). Finding Petitioner's claims meritless, the Court held that a hearing

on the motion was not required and dismissed the motion. (Doc. No. 99.)

On December 23, 2004, Petitioner filed a motion for certificate of appealability under 28 U.S.C. § 2253(c)(1). (Doc. No. 100.)

On February 18, 2005, the Court denied Petitioner's motion for certificate of appealability. (Doc. No. 101.)

## II.  DISCUSSION

### 1)  Double Jeopardy

It is not unreasonable to assert that, by definition, a "jurist of reason" would consider the totality of an issue rather than merely a single component.

Yet in denying the Issuance of a Certificate of Appealability, the District Court, for a second time, chooses to ignore salient, relevant components of the **1997 Final Judgement and Permanent Injunct.** It is the existence of these other components which gives rise to a First Jeopardy. (Doc. No. 81 - EXHIBIT 1.)

By not acknowledging the "in personam" strictures imposed upon Petitioner by the **1997 Order,** as though they did not exist, the District Court denied the Certificate of Appealability without adjudication on the merits, and transparently transforms the **Final Judgement and Permanent Injunction** into an entity of it's own choosing - a strictly Civil Remedy. In reality, the **1997 Order** is much more.

The U.S. District Court for the Southern District of New York ellucidates with crystal clarity the "in personam" constraints imposed upon Petitioner. In both his § 2255 Motion and his Motion for Certificate of Appealability, Petitioner plainly points to these constraints and

3 of 9

makes reasonable case for their very existence to be, arguendo, cause for a declaration of **Double Jeopardy**.

The "in personam" sanctions imposed by the <u>1997 Order</u>, effectively serving their purposes as "deterrents", represent a FIRST JEOPARDY. <u>U.S. v. Ursery, 518 US 267 (1996)</u> and <u>Austin v. U.S., 125 L.Ed.2d 488 (1993)</u>.

Petitioner maintains that <u>Halper, infra</u>, is controlling;

> "A civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather only be explained as also serving either retribution or deterent purposes, is punishment for the purpose of the Double Jeopardy clause." <u>U.S. v. Halper, 490 US 435 (1989)</u>.

Even if Petitioner's position of **Double Jeopardy** is not upheld, the very existence of the "in personam" constraints is of arguable merit, and should have provoked consideration as a Defense Strategy. The obvious fact that it did not is indicative of Ineffective Assistance of Counsel. <u>U.S. v. Mannino, 212 F.3d 835 (3rd Cir. 2000); Matire v. Wainwright, 811 F.2d 1430 (11th Cir. 1987)</u>.

Petitioner asserts that there is more than enough meat on this bone to provoke jurists of reason to debate.

2) <u>Ex Post Facto</u>

Just as the District Court's ignoring of the existence of the deterrent factors embodied as "in personam" constraints in the <u>1997 Order</u> does not cause the arguable issue of Double Jeopardy to be rendered invalid, so too does it's refusal to accept statistical

and mathematical truths relating to Petitioner's wherewithal renders invalid, or at least vulnerable to attack, the Court's determination that the Petitioner has the ability to pay Restitution.

The District Court's finding that Plaintiff has the ability to pay restitution but not a fine falls way short of a required determination of Petitioner's actual ability to support his family and himself, plus pay restitution upon his release from incarceration, as enunciated by this Court in <u>U.S. v. Copple, 24 F.3d 550 (3rd Cir. 1994)</u>.

Hard numbers make for a good example of Petitioner's position:

The Pre-Sentence Investigation Report (PSR) reports No Assetss, Negative

<u>THIS SPACE INTENTIONALLY LEFT BLANK</u>

Net Worth, and Negative Monthly Cash Flow. The PSR also indicates an Adjusted Gross Income for Petitioner's household approximating $42,000 for each of the two years prior to sentencing. (It should be noted that the figures for Adjusted Gross Income are inclusive of Petitioner's wife's substantial contribution, to which both Petitioner and Government have no claim).

Extrapolating, if 100% of Petitioner's household Adjusted Gross Income were used to pay restitution (meaning not $1 to be used for necessary living expenses such as housing, food, education, clothing for Petitioner and his dependents), it would take more than 10 years to pay the $420,750 of restitution, ordered by the District Court to be paid over 3 years. Patently, not possible.

Yet, such simplistic calculation was obviously not utilized as a factor in District Court's determination of amount of, and payment schedule for, restitution. This certainly contravenes the holdings of this Court in <u>U.S. v. Logar, 975 F.2d 958 (3rd Cir. 1992)</u> and <u>U.S. v. Copple, 74 F.3d 479 (3rd Cir. 1996)</u> concerning fortuitous windfalls and realistic expectations, and makes for <u>EX POST FACTO.</u>

Just as the apple does not fall up, Petitioner's inability to pay the ordered restitution is obvious, and not a subject for reasonable refutation.

The Court of Appeals would be justified in allowing Petitioner to appeal this issue.

3)   <u>Excessive Fines</u>

Here again, the District Court seems to prefer to rule on Petitioner's Motion for Issuance of a Certificate of Appealability by

ignoring both facts and precedents which are contrary to it's position.

In determining Denial of Issuance of Certificate of Appealability, the District Court still maintains that Petitioner paid no restitution amount prior to sentencing, <u>despite evidence and records to the contrary</u>. The District Court chooses to not acknowledge the fact that it is using one of two PSR's prepared, and the incorrect one at that.

Petitioner is entitled to judgement not based upon misleading or inaccurate information in the record. <u>Townsend v. Burke, 334 US 736 (1948)</u>; <u>U.S. v. Mannino, 212 F.3d 835 (3rd Cir. 2000)</u>; <u>Shukwit v. US, 973 F.2d 903 (11th Cir. 1992); U.S. v. McDowell, 888 F.2d 285 (3rd Cir. 1989)</u>.

The combination of the $1.6 million of the <u>1997 Order</u> and the $420,750 of this Judgement flies in the face of holdings of other jurists of reason regarding "double recovery by victims" <u>(U.S. v. Atkinson, 788 F.2d 900 (2nd Cir. 1980)</u>; concerning "no losses beyond those caused by offense of conviction" and "losses caused by offense represent 'outer limits' of restitution (<u>Hughey v. US, 495 US 411 (1990)</u>; and stating that restitution amount greater than loss caused by conspiracy violates <u>18 USC § 3663</u> and <u>§ 3664</u> (<u>U.S. v. Arutunoff, 1 F3.d 1112 (10th Cir. 1993)</u>, (<u>U.S. v. Stoddard, 1150 F.3d 1140, (9th Cir. 1998)</u>.

Failure of Defense Counsel Lock to argue these points during sentencing phase, or to bring up on Direct Appeal, prejudiced Petitioner, and gives rise to charges of Ineffective Assistance of Counsel.

4) <u>General Ineffective Assistance of Counsel</u>

In it's Denial of Issuance of Certificate of Appealability, the District Court neglects to comment upon Petitioner's charge of General Ineffective Assistance of Counsel.

Defense Counsel's Lack of <u>Communication and Dismissal of my</u> Interests cannot be remotely considered as tactical maneuver, by any reasonable measure, and smacks of Disloyalty in defending Petitioner's cause.

Failure to respond to AppelleeBrief using something so obvious as Petitioner's Lack of Continuing Criminal Conduct was incompetent and unprofessional.

Defense Counsel's Failure to file a Motion to Dismiss predicated upon Petitioner's claims of Double Jeopardy was Inexcusable.

For Defense Counsel to cavalierly suggest (**Doc. No. 81 - EXHIBIT 3**) that Petitioner himself may take up shortfalls in appealable issues via Motion § 2255 was callous, insensitive and arrogant.

Counsel's Failure to argue such points as Ex Post Facto and Excessive Fines during Sentencing Phase shows a detachment bordering on plain ignorance.

Submission of Defective Evidence at sentencing, along with less than focused or satisfactory arguements regarding a 1 point reduction in Sentencing Guideline Calculation for Wireless Licensing Fees incurred per contractual obligations, indicates a lack of understanding of the significance of the issue, and a failure to adequately prepare, that is far below any standard reasonably expected

of a member of the Criminal Bar.

Petitioner stands incredulous that Jurist Concept of Effective Assistance of Counsel is that portrayed in Petitioner's Motion § 2255, (Doc. No. 81 - EXHIBIT 3), and suggests that, given similar and exact circumstances, other jurists of reason have already disagreed with the findings of the District Court. U.S. v. Maroney, 423 F.2d 869 (3rd Cir. 1969); Atilus v. U.S., 406 F.2d 694, 697 (5th Cir. 1969); U.S. v Raimondi, 760 F.2d 460 (2nd Cir. 1985); Mannino, supra; Cuyler v. Sullivan, 446 US 335, (1980); Powell v. Alabama, 77 L.Ed 158, 287 US at 68-69; Strickland v. Washington, 466 US 668 (1984).

### PRAYER FOR RELIEF

As the issues presented are adequate to deserve encouragement to proceed further, Petitioner respectfully requests of this Court the Issuance of a Certificate of Appealability.

Executed this 7th day of March, 2005, at FCI-MILAN.

                                          JOSEPH VIGGIANO  
                                          10590-067

CERTIFIED MAIL

10590-067. A
Federal Correctional Inst.
P.O. Box 1000
Milan, MI 48160

7001 1140 0002 1214 65|

Clerk of the
United States
for the T
601 M
Philade

LEGAL MAIL



RECEIVED
MAR 1 2005
U.S. C.A. 3rd

